UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COOPERSVILLE MOTORS, INC. and
ROBERT L. ANDERSON,

    Plaintiffs and Counter-Defendants,

v.

FEDERATED MUTUAL INSURANCE
COMPANY,

    Defendant and Counter-Plaintiff,

and

FEDERATED MUTUAL INSURANCE
COMPANY,

    Third-Party Plaintiff,

v.

TERRY KRAKER and CORY YOST,

    Third-Party Defendants.
_____/

File No. 1:09-CV-1110

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This matter is before the Court on a second motion for summary judgment filed by Defendant/Counter-Plaintiff/Third-Party Plaintiff Federated Mutual Insurance Company

("Federated").[1] (Dkt. No. 47.) Federated contends that it is entitled to summary judgment because Robert L. Anderson has no authority to sue on behalf of Coopersville Motors, Inc. ("CMI"), and, additionally, because no coverage is owed under the Federated policy of insurance issued to CMI (the "Policy") for Plaintiff's claims.

In response, Plaintiff CMI contends that the issues raised in Federated's motion have largely been decided by the Court in its opinion on Federated's first motion for summary judgment, and that any remaining issues must be determined by the trier of fact.[2]

**I.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If

---

[1]The Court granted in part and denied in part Federated's first motion for summary judgment. (Dkt. Nos. 53, 54.) The Court granted partial summary judgment as to the claims filed by Robert L. Anderson because he lacked standing to sue for coverage under the insurance policy. (Dkt. No. 53, Op. 10.) The Court denied Federated's argument that it was entitled to summary judgment on the basis that the case was time-barred, because there were questions of fact as to whether Federated should be estopped from asserting a statute of limitations defense. (*Id.* at 8.)

[2]CMI's contention that Federated's entire brief should be disregarded because it exceeds the allowable page limit lacks merit. The Local Court Rules provide that "Any brief filed in support of or in opposition to a dispositive motion shall not exceed twenty-five (25) pages in length, exclusive of cover sheet, tables, and indices." W.D. Mich. LCivR 7.2(b). Federated's brief is within this limit.

Defendants carry their burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

**II.**

Federated's first argument in support of its motion for summary judgment is that Anderson has no authority to sue on behalf of CMI. In support of this assertion, Federated has presented evidence that Anderson sold the assets of CMI effective December 21, 2007, (Dkt. No. 51, Ex. T), and, as of February 27, 2008, took step towards rescinding the purchase of CMI from Kraker. (Dkt. No. 51, Ex. U, V.) Federated also notes that Anderson has not presented any evidence that he has been authorized by CMI to act on its behalf.

CMI has not presented any defense to this argument, except to assert that the Court already addressed this issue in its first opinion when it dismissed Anderson as a party to this action.

Contrary to CMI's contentions, in the previous opinion this Court only determined that Anderson did not have standing to assert insurance coverage claims on his own behalf because he was not a named insured. The Court did not address the issue of whether Anderson could sue on behalf of CMI.

The Court is somewhat confused by Defendant's contention that "Anderson lacks the capacity to sue on behalf of CMI." Although Anderson signed the verified complaint on behalf of CMI in his capacity as president of CMI (Dkt. No. 1), this action was not filed by "Anderson on behalf of CMI," but by CMI, a corporation. A corporation's capacity to sue is governed by state law, Fed. R. Civ. P. 17(b)(2), and under Michigan law a corporation can maintain a suit in its own name. Mich. Comp. Laws § 450.1261(b) ("A corporation . . . shall have power in furtherance of its corporate purposes to . . . [s]ue and be sued in all courts . . . in the same manner as natural persons."). Although Federated has asserted that Anderson sold the corporate assets of CMI and took steps to rescind his purchase of the stock of CMI,[3] Federated has not presented evidence suggesting that CMI does not have capacity to sue. While the Court can take judicial notice that CMI was dissolved on July 15, 2010, after this

---

[3] Anderson's attempts to rescind were apparently not successful. Anderson testified that as of July 8, 2010, when his deposition was taken, he still owned the stock of CMI. (Dkt. No. 47, Ex. A, Anderson Dep. 19.)

4

suit was filed (*see* http://www.michigan.gov/business (last visited February 10, 2011)), even a dissolved corporation that has not yet completed winding up its affairs may continue to "sue and be sued." *See Flint Cold Storage v. Dep't of Treas.*, 776 N.W.2d 387, 396-97 (Mich. Ct. App. 2009) (citing Mich. Comp. Laws §§ 450.1833(a), 450.1834(e)). Because Federated has not shown that CMI lacked capacity to sue, the Court denies Federated's motion for summary judgment to the extent that it is based on Anderson's lack of capacity to sue on behalf of CMI.

### III.

Federated also moves for summary judgment on the basis that there is no coverage under the policy because there was no "occurrence" of "employee-theft" during the policy period, and because, even if there was an "occurrence," coverage is excluded under the explicit exclusions contained in the policy and because the policy conditions have not been met.

CMI has not filed a response to Federated's coverage argument, except to say that CMI purchased the employee theft coverage on Federated's recommendation, and that the Court has already determined that coverage is a question of fact to be determined by the jury.

Contrary to CMI's contentions, this Court has not previously addressed coverage under the policy. In the previous opinion, this Court only determined that there was a question of fact as to as to whether Federated should be estopped from asserting a statute of limitations defense. (Dkt. No. 53, Op. 8.) The Court did not address whether there was a

5

covered loss under the policy, or whether any of the other policy exclusions or conditions barred coverage.

In 2007, CMI purchased a commercial insurance policy from Federated for the period of March 19, 2007, to March 19, 2008. (Dkt. No. 47, Ex. B, Declaration Sheet.) The policy included a Commercial Crime Coverage Part. (*Id.*) This Part insured against employee theft, among other things. (Dkt. 47, Ex. C, Crime Coverage Part.) The policy also included an endorsement limiting the Employee Theft Insuring Agreement to three employees: Cory Yost, Stacy Rossett, and Terry Kraker. (Dkt. No. 8, Answer, Ex. A-4, Page ID#169.)

The Crime Coverage Part contains an insuring agreement which provides, in part:

**A. Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Condition **E.1.k** or **E.1.l.**, which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition **E.1.g.**:[4]

**1.    Employee Theft**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other

---

[4] Conditions E.1.k, E.1.l., and E.1.g. do not apply. E.1.k. pertains to a Loss sustained during prior insurance issued by us or any affiliate, E.1.l., pertains to a Loss during prior insurance issued by us or any affiliate, and E.1.g pertains to extended period to discover loss from the date of cancellation. There is no claim that any of these provisions are applicable to Plaintiff's alleged loss and, thus, do not impact the determination of whether there is coverage.

persons.

For purposes of this Insuring Agreement, "theft" shall also include forgery.

(Dkt. No. 47, Ex. C, § A, Page ID#885.)

The policy defines "occurrence" as follows:

a. Under Insurance Agreement **A.1** [Employee Theft]:

(1) an individual act;

(2) The combined total of all separate acts whether or not related; or

(3) A series of acts whether or not related; committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k** or **E.1.l**.

(Ex. C, § F, Page ID#897-98.) "Theft" is defined as the "unlawful taking of property to the deprivation of the Insured." (*Id.* at Page ID#898.)

CMI alleges in its complaint that "subsequent to entering into the Policy," CMI "incurred the losses" that are shown on the proof of loss statements. (Dkt. No. 1, Compl. ¶ 10.) CMI filed two proof of loss statements on October 7, 2009, under the employee dishonesty coverage provision, claiming $658,248.76 in damages caused by the conversion of assets by employees Terry Kraker and Cory Yost. (Compl. Ex. A, Ex. B.) According to the statements, the date of loss was March 19, 2007, the same day the policy went into effect. The conduct that CMI contends constitutes employee theft under the policy can be summarized as follows:

7

> 1. Before the Federated Policy was issued and before Anderson took over the operation of the CMI Chrysler dealership, Kraker and Yost used funds received on vehicle sales to pay current expenses rather than paying Chrysler Financial as required under the floor plan financing agreement;
>
> 2. Kraker and Yost used income received by CMI after February 16, 2007, to pay business expenses incurred by CMI before February 16, 2007; and
>
> 3. Kraker and Yost provided inaccurate and incomplete financial information to Anderson thereby misstating the financial condition of CMI before Anderson signed the Stock Agreement.

(Dkt. No. 47, Ex. A, Anderson Dep. 14, 88-96, 122-24, 136-50, 167-70; Dkt. No. 50, Ex. S, 09/25/2007 letter re misrepresentations.)

None of CMI's allegations, even if true, are sufficient to trigger coverage under the Policy's "Employee Theft" provision. The policy provides coverage for "loss that you sustain resulting directly from an 'occurrence' taking place during the Policy Period." (Dkt. No. 47, Ex. C, § A, Page ID#885.) To the extent CMI complains that Kraker and Yost used funds received on vehicle sales to pay current expenses rather than paying Chrysler Financial as required under the floor plan financing agreement before Anderson took over the CMI dealership, they have not described a "loss" that CMI sustained directly resulting from an "occurrence" during the policy period. All of the conduct occurred before the policy period, which began on March 19, 2007. Moreover, none of the conduct can be characterized as theft from CMI. These allegations suggest a bad business deal, but they do not demonstrate theft from CMI during the policy period.

To the extent CMI claims that Kraker and Yost used income received by CMI after February 16, 2007, to pay business expenses incurred by CMI before February 16, 2007, such claims are not covered under the policy because, even if some of the payments were made during the policy period, CMI has not identified conduct that amounts to a "theft" under the terms of the policy. In order to constitute an employee "theft" there must be an unlawful taking of property to the detriment of CMI, the Insured. There is no allegation and no evidence, that the moneys allegedly diverted by Kraker and Yost were used for anything other than to pay legitimate debts owed by CMI. There is no evidence that these monies were taken to the deprivation of CMI. The payment of a business debt is neither a loss to the insured nor a theft and, therefore, this alleged claim also does not trigger coverage under the terms of the policy.

To the extent CMI claims that Kraker and Yost provided inaccurate and incomplete financial information to Anderson, thereby misstating the financial condition of CMI, before the Stock Agreement was executed, such claims are not covered under the policy because they did not occur during the policy period and because they do not constitute theft from CMI.

CMI's allegations of wrongful conduct on the part of Kraker and Yost do not trigger coverage under the policy, and CMI has not identified any other "occurrence" of "Employee Theft" during the policy period that would trigger coverage under the policy. Federated is

accordingly entitled to summary judgment on CMI's claims for damages based on Federated's failure to pay under the Policy.

In addition, even if CMI's allegations were sufficient to trigger coverage, Federated would nevertheless be entitled to summary judgment on CMI's claims under the policy because, based upon evidence of Anderson's knowledge before entering into the Policy, certain policy exclusions and conditions bar coverage in this matter.

The Policy does not cover a loss caused by an employee if that employee committed theft or a dishonest act before the policy period and CMI learned of those acts before the policy period.[5]

Federated has produced evidence that, as early as February 8, 2007, Anderson, an officer of CMI, learned that Kraker and Yost used money from the sale of vehicles to pay past due bills, rather than the floor plan financing, as required. (Dkt. No. 47, Ex. N, 02/08/2007 email). Anderson admitted that on February 8, 2007, he knew the dealership was

---

[5] The Policy specifically excludes from coverage:

> b. Acts of Employees Learned Of By You Prior To The Policy Period
>
> Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners "members", "managers", officers, directors or trustees, not in collusion with the "employee" learned that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

(Dkt. No. 47, Ex. C, § D.1.b, Page ID#886.)

out of trust with Chrysler Financial and he knew that the dealership used money from vehicle sales to pay other debts, rather than pay off Chrysler. (Dkt. No. 47, Ex. A, Anderson Dep. 241-42). He was also aware of discrepancies in the financial statements and he knew that there were improprieties with the way Kraker and Yost dealt with the floor plan inventory. (*Id.* at 244, 246-47.) He further admitted that he suspected that Kraker and Yost were guilty of fraud and misrepresentation as early as February 8, 2007. (*Id.* at 248.) Moreover, Anderson admitted that by March 15, 2007, four days before the subject policy was issued, he was aware that CMI was out of trust with Chrysler Financial for $119,766.00; that this demand for payment was totally unexpected because Kraker and Yost failed to disclose this liability before closing; and that in late February 2007, Chrysler Financial sought an additional $249,377.00 for vehicles no longer in the showroom and such amount having accrued during Kraker's ownership and management. (Dkt. No. 50, Ex. O, Draft Compl. ¶¶ 27-30; Anderson Dep. 165).

CMI has not contradicted any of Federated's evidence. Because the evidence is unrefuted that Anderson learned of the alleged dishonest acts of Kraker and Yost before the policy period began, coverage is excluded under the terms of exclusion D.1.b.

Finally, CMI's claims are barred because it failed to meet a condition necessary for coverage. The Policy provides that the insurance is void if the insured intentionally conceals

or misrepresents a material fact.[6] Anderson admitted that he did not disclose to Heintz, the insurance agent, the dishonest acts of Kraker and Yost that he learned of in February 2007, before the policy was issued. (Anderson Dep. 248). The actions of Kraker and Yost in the handling of the monies from the sale of vehicles were a material fact in securing the Policy because CMI obtained additional coverage for Employee Theft committed by Kraker and Yost. Coverage, therefore, is void because Anderson concealed material facts concerning the actions of Kraker and Yost when procuring the subject insurance.

For all the foregoing reasons, Federated is entitled to a declaration that no coverage is owed under the Policy for CMI's claims. Federated contends that because it does not owe coverage, it is entitled to summary judgment on all of CMI's claims. The Court agrees that Federated is entitled to judgment on CMI's claims for damages based on Federated's failure to pay under the Policy. This would include Count I, alleging breach of contract, and Count IV, alleging violation of Mich. Comp. Laws § 500.2006 (applying a 12% interest rate to

---

[6]The Policy provides the following condition to coverage:

b. Concealment, Misrepresentation Or Fraud

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:
(1) The insurance;
(2) The property covered under this insurance;
(3) Your interest in the property covered under this insurance; or
(4) A claim under this insurance.

(Dkt. No. 47, Ex. C, § E.1.b, Page ID#889.)

claims not paid on a timely basis). The Court must also consider whether the finding of no coverage entitles Federated to judgment on Counts II, III, and V, alleging fraudulent misrepresentation, innocent misrepresentation, and exemplary damages. These claims all purport to stem from Defendant's agent's alleged misrepresentations during the negotiation of the Policy. However, when CMI's evidence and arguments are viewed in their entirety, it is clear, as this Court noted in its opinion on Federated's first motion for summary judgment, that "[CMI's] claims are not directed to the creation of the insurance contract or to the need for the commercial crime endorsement. Instead, [its] complaint is directed to Federated's failure to pay the claim for employee theft." (Dkt. No. 53, Op. 10.) CMI has come forward with nothing in response to Federated's second motion for summary judgment to suggest that it has any claims for damages other than those arising out of its claim under the Policy.

Count VI of the complaint, which alleges promissory estoppel, is a claim made by the "individual Plaintiffs." Because the Court has already dismissed the claims brought by Plaintiff Robert L. Anderson, Jr., and because there are no other individual plaintiffs, Federated is also entitled to judgment on Count VI.

Because this Court has determined that Plaintiffs CMI and Anderson are not entitled to recover from Federated, and because Federated filed its third-party complaint against Terry Kraker and Cory Yost (Dkt. No. 10) to recover only such amounts as Plaintiffs

recovered from Federated, Federated's third-party complaint will be dismissed as moot.

An order and judgment consistent with this opinion will be entered.


Dated: February 11, 2011            /s/ Robert Holmes Bell
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE